**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hameed Abdulhussain, | No. CV-22-01458-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| MV Public Transportation Incorporated, | |
| Defendant. | |

Before the Court is Defendant MV Public Transportation's[1] ("MV") Motion to Dismiss Plaintiff Hameed Abdulhussain's Complaint. (Doc. 10.) Plaintiff filed a Response (Doc. 12), and MV filed a Reply (Doc. 15). After considering the parties' briefs and the relevant law, the Court will grant MV's Motion to Dismiss for the reasons discussed herein.

### I.    BACKGROUND

This is a dispute between an employer and its former employee. In July 2022, Plaintiff filed a Complaint in state court alleging MV discriminated and retaliated against him based on his national origin and/or religion when MV terminated him. Plaintiff also alleges he was defamed. (Doc. 1-3 at 2–11.) Plaintiff served MV with the Complaint on August 19, 2022. (Doc. 10 at 3.) MV removed the action to this Court on August 30, 2022. (*Id.*)

Plaintiff is a middle eastern, Muslim man who began working for MV on August

---

[1] Plaintiff incorrectly named Defendant "MV Public Transportation, Inc." (*See* Doc. 10 at 1.)

3, 2009.  (Doc. 1-3 at 4.)  At some point the parties entered into a Collective Bargaining Agreement ("CBA").  (*Id.*)  Plaintiff alleges that in August 2020, he requested to cash out 160 hours of vacation hours he accumulated from ten years' work for MV.  (*Id.*)  Plaintiff contends that on August 8, 2020, MV offered him only 80 hours.  (*Id.*)  In November 2020, Plaintiff alleges MV increased this amount to 95 hours, an offer he rejected.  (*Id.*)

On February 25, 2021, Plaintiff alleges his union president attempted to set up a meeting with Plaintiff's human resources agent, Donna Harper.  (*Id.*)  Plaintiff alleges he called Harper, who stated she would get back to Plaintiff on March 1, 2021, but never did.  (*Id.*)  Furthermore, on March 19, 2021, Plaintiff alleges his supervisor Paulette Johnson stopped him at MV's entrance to "check the van for damage."  (*Id.*)  While stopped, Plaintiff alleges someone by the name Edna Garcia questioned why he was late, but Garcia did not ask a simultaneously arriving, non-Muslim driver the same question. (*Id.* at 4–5.)  The following day Plaintiff alleges he made a complaint to MV about Garcia's questioning, and MV advised that disciplinary action would be taken against Garcia.  (*Id.* at 5.)  However, Plaintiff contends that between March 2021 and July 2021, Garcia further discriminated against Plaintiff by incorrectly adjusting his timecards, harassing him before and after shifts, assigning him challenging routes and passengers, and filing false complaints against him to management.  (*Id.*)

On June 24, 2021, Plaintiff filed a grievance with the Arizona Industrial Commission regarding his alleged unpaid wages.  (*Id.*)  In response, Plaintiff contends that Harper notified his Union representative, Dana Kraiza, that Harper had spoken on the phone with Plaintiff twice about two offers, but that Plaintiff refused them.  (*Id.*)  Plaintiff asserts this exchange never happened, and that upon confronting Harper about the "false claims," Plaintiff received no response.  (*Id.*)

Soon after, Garcia placed Plaintiff on administrative leave on July 1, 2021.  (*Id.*) Plaintiff alleges Garcia made false accusations against him in retaliation for his complaints against her, and because of his race/ethnic background.  (*Id.*)  The following day, Plaintiff was notified that he was under investigation for threatening MV employees

1  in violation of company policies.  (*Id.* at 6.)  Plaintiff contends he denied threatening any

2  employees and again raised the issue with his vacation time and the fact that Harper

3  never contacted him.  (*Id.*)  Plaintiff alleges he requested camera footage to prove he

4  didn't threaten anyone, but that MV stated there was no audio.  (*Id.*)

5  On July 22, 2021, MV allegedly terminated Plaintiff with nothing in writing, no

6  paid leave, no hearing, and no union representation.  (*Id.*)  That same day, Plaintiff recalls

7  speaking to MV's previous general manager, Jon Huynh, and Kraiza about his vacation

8  pay.  (*Id.*)  Then, on September 11, 2021, Plaintiff alleges MV falsely accused him of

9  being on the premises and made inferences that he was a terrorist.  (*Id.*)

10  Plaintiff brings claims for national origin/religious discrimination and retaliation

11  under Title VII and state law, as well claims of defamation relating to his termination

12  from MV.  (*Id.* at 7–11.)  MV moves to dismiss Plaintiff's Complaint under Federal

13  Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 10 at 2.)  MV argues that

14  Plaintiff's claims for discrimination and retaliation arising under Title VII and state law

15  are governed by the parties' CBA, thus requiring this matter to follow the CBA's

16  grievance and arbitration procedures.  (*Id.* at 1–2.)  Plaintiff argues the discrimination and

17  retaliation claims are not covered by the CBA, but that if they were, they were followed

18  internally by the Union and the EEOC, but MV failed to participate.  (Doc. 12 at 1–2.)

19  **II.     LEGAL STANDARD**

20  Courts may dismiss a claim for "lack of jurisdiction over the subject matter."  Fed.

21  R. Civ. P. 12(b)(1).  When reviewing motions to dismiss under Rule 12(b)(1), the Court

22  asked to either look at facial challenges, where review is limited to the complaint itself,

23  or factual questions, where review may expand into extrinsic evidence.  *Wolfe v.*

24  *Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  As such, when Rule 12(b)(1) review is

25  factual in nature, "the district court is not restricted to the face of the pleadings, but may

26  review any evidence, such as affidavits and testimony, to resolve factual disputes

27  concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560

28  (9th Cir. 1988).  In such a motion, the burden of proof rests with the party asserting

jurisdiction, and "no presumption of truthfulness attaches to plaintiff's allegations." *Owen v. United States*, No. CIV S-06-2531 DFL DAD PS, 2007 WL 628662, at *1 (E.D. Cal. Feb. 28, 2007) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979)).

Additionally, under Rule 12(b)(6) claims may be dismissed for "failure to state a claim upon which relief can be granted." Thus, Courts may dismiss claims failing to allege a "cognizable legal theory" or "sufficient facts . . . under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The Court looks at the four corners of the complaint, but it need not accept conclusory allegations as true, nor any unreasonable inferences, legal characterizations, or unwarranted deductions of fact. *Transphase Sys., Inc., v. S. Cal. Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993). Typically, if Courts are considering a Rule 12(b)(6) motion and considers evidence outside the pleadings, it must convert the motion to a motion for summary judgment and allow the nonmoving party an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). However, if the Court is considering "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice," the Court may do so without converting the motion to one of summary judgment. *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*

## III.   DISCUSSION

Plaintiff did not attach the CBA to the Complaint. Nevertheless, Plaintiff incorporated the CBA by reference in the Complaint. (*See* Doc. 1-3 at 4). The Court also finds that the CBA helps form the basis of Plaintiff's alleged discrimination and wrongful termination/retaliation claims against MV, seeing as the CBA outlines required grievance and arbitration procedures for such claims. (*See* Doc. 10-1 at 7.) For these reasons, in considering MV's Motion to Dismiss the Court will also consider the CBA. *See*

1   *McCarthy*, 850 F.2d at 560 (regarding Rule 12(b)(1) dismissal); *see also Ritchie*, 342

2   F.3d at 908 (regarding Rule 12(b)(6) dismissal).

3       **A. Plaintiff's federal and state law discrimination and retaliation claims are**

4           **covered by the CBA.**

5       MV moves the Court to dismiss Plaintiff's federal and state discrimination and

6   retaliation claims because Plaintiff failed to raise them through the CBA's mandatory

7   grievance procedure.  MV points to the CBA's following provisions:

8       <u>Article 1, Section 2:</u>
        The Company and the Union agree that it will not unlawfully discriminate
9       against any individual because of such individual's race, color, religion,
        sex, national origin, age, marital status, veteran status, sexual orientation,
10      gender identity, disability, or Union affiliation or non-affiliation or Union
        business or activity. The parties agree **that disputes under this Article**
11      **shall be resolved through grievance and arbitration procedure.**
        <u>Article 9, Section 1:</u>
12      For the purpose of this Agreement, a grievance is defined as any
13      controversy between the Company and the Union as to any matter
        involving the interpretation or application of the terms of the Agreement, or
14      any controversy between the Company and Union as to whether or not a
        non-probationary employee is disciplined for violation or when a dispute
15      exists concerning the work rules or working conditions.

16

17  (Doc. 10-1 at 4, 7) (emphasis added).

18      "It is well settled an employer and union can waive employees' rights to a judicial

19  forum and compel the use of arbitration for adjudication of federal and state statutory

20  claims."  *Sanchez v. Securitas Sec. Servs. USA, Inc.*, No. 2:17-cv-08462-SVW-E, 2018

21  WL 5861258, at *2 (C.D. Cal. July 17, 2018) (citing *14 Penn Plaza LLV v. Pyett*, 556

22  U.S. 247, 256 (2009)).  In *Pyett*, the Supreme Court held that union members bringing

23  claims under the Age Discrimination in Employment Act were required to follow a

24  "collective-bargaining agreement that clearly and unmistakably requires union members

25  to arbitrate."  556 U.S. at 274.  The Court clarified that: "The decision to resolve ADEA

26  claims by way of arbitration instead of litigation does not waive the statutory right to be

27  free from workplace age discrimination; it waives only the right to seek relief from a

28  court in the first instance."  *Id.* at 265–66 (citing *Gilmer v. Interstate/Johnson Lane*

- 5 -

1   *Corp.*, 500 U.S. 20, 26 (1991)).  Specifically, the relevant CBA provisions in *Pyett* read:

2   　　30. NO DISCRIMINATION There shall be no discrimination against
3   　　any present or future employee by reason of race, creed, color, age, disability,
4   　　national origin, sex, union membership, or any characteristic protected by
5   　　law, including, but not limited to, claims made pursuant to Title VII of the
6   　　Civil Rights Act, the American with Disabilities Act, the Age
7   　　Discrimination in Employment Act, the New York State Human Rights
8   　　Law, the New York City Human Rights Code, . . . or any other similar
9   　　laws, rules or regulations. All such claims shall be subject to the grievance
10  　　and arbitration procedure (Articles V and VI) as the sole and exclusive
11  　　remedy for violations. Arbitrators shall apply appropriate law in rendering
12  　　decisions based upon claims of discrimination.

*Id.* at 252.

MV argues that like the agreement in *Pyett*, the CBA's language is "clear and unmistakable" in requiring that employee discrimination claims be brought through the grievance process and arbitration.  (Doc. 10 at 8.)  Plaintiff argues that Article I of the CBA is not "clear and unmistakable" because the CBA does not name the specific statutes that are to be incorporated into the dispute resolution cause.  (Doc. 12 at 6.) Plaintiff relies on Fourth Circuit precedent found from *Carson v. Giant Food, Inc.* for the proposition that "for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims." 175 F.3d 325, 331–32 (4th Cir. 1999).  Although the Court agrees the Fourth Circuit's exacting standard is not satisfied here, it finds it is under *Pyett* and Ninth Circuit precedent.

Plaintiff agrees that *Pyett* establishes that employees must arbitrate their claims if the CBA "clearly and unmistakably" requires it.  (Doc. 12 at 6.)  But notably, the Supreme Court refused to define what "clear and unmistakable" language is because the plaintiff in that case failed to dispute the issue in the lower courts.  *See Pyett*, 556 U.S. at 272–73.  As the Ninth Circuit has recently asserted, "[t]he party contesting arbitrability bears the burden of demonstrating how the language in the collective bargaining agreement excludes a particular dispute from arbitration." *Columbia Exp. Terminal, LLC*

- 6 -

*v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 842 (9th Cir. 2022) (quoting *Standard Concrete Prods., Inc. v. Gen. Truck Drivers, Office, Food & Warehouse Union, Loc. 952*, 353 F.3d 668, 674 (9th Cir. 2003)).  Furthermore, in *Columbia* the Ninth Circuit held that even though the CBA did not explicitly contemplate federal RICO claims, because the CBA "explicitly contemplates a dispute resolution mechanism covering the exact conduct alleged as the basis" of the asserted timesheet fraud claims, the RICO claim could not be brought in court and had to go through the CBA's grievance and arbitration process.  *Id.* at 845–46.  The *Columbia* Court also noted that federal law requires doubts to be resolved in favor of coverage under the CBA, so it was plaintiff's burden to demonstrate that the RICO claim was not encompassed in the CBA contrary to its stated scope.  *Id.* at 846.  This directly contrasts with the Fourth Circuit's *Carson* standard, which would have required RICO claims to be contemplated in the CBA for its arbitration and grievance procedure requirements to take effect.  *See Carson*, 175 F.3d at 331–32.

Here, the CBA expressly encompasses the issues at hand.  Article 9 defines a grievance as "*any controversy* between the Company and the Union *as to any matter involving . . . the application of the terms of the Agreement . . .* or when a *dispute exists concerning* the work rules or working conditions."  (Doc. 10-1 at 7) (emphasis added).  Article 1, Section 2 states "[t]he Company and the Union agree that *it will not unlawfully discriminate against any individual because of such individual's race, color, religion . . . national origin . . .* [and] [t]he parties agree that *disputes under this Article shall be resolved through the grievance and arbitration procedure*."  (*Id.* at 5) (emphasis added).  The Court finds the language clear and unmistakable that Plaintiff *shall* process his discrimination claim through the CBA's grievance procedure and arbitration.  *See Columbia Exp. Terminal, LLC*, 23 F.4th at 842.

MV further argues that Plaintiff fails to allege having followed the CBA's grievance procedures regarding his claims for discrimination and retaliation.  (Doc. 10 at 9.)  Plaintiff argues he "made claims in an attempt to resolve the matter with Defendant"

and "even attempted to submit the matter through arbitration." (Doc. 12 at 9.)  Plaintiff points the Court to his allegations of filing with the Arizona Attorney General, Division of Civil Rights, the U.S. Equal Employment Opportunity Commission, and that he filed a complaint against Garcia with MV.  (*Id.*)  MV's Response counters that: (1) Plaintiff fails to cite to CBA provisions or case law that states an attempt to pursue a grievance satisfies actually pursing one under the CBA's provisions, or that it waives a defendant's ability to argue non-compliance; (2) the grievance form Plaintiff attached to his Response is not for a discrimination claim; and (3) it would be for an arbitrator to decide if Plaintiff satisfied the grievance procedure, not the Court.  (Doc. 15 at 6.)

The Court agrees with MV.  "It is a general rule in collective bargaining agreement disputes that employees must exhaust contractual remedies and internal grievance *and arbitration procedures* before bringing suit."  *Thomas v. Garrett Corp.*, 744 F. Supp. 199, 203 (D. Ariz. 1989) (emphasis added), aff'd 904 F.2d 41 (9th Cir. 1990); *see also Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988) ("A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, . . . as well as eviscerate a central tenet of federal labor contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.") (cleaned up).

Plaintiff makes no allegations about pursuing discrimination or retaliation claims through the CBA's outlined grievance and arbitration procedures.  Plaintiff did attach a grievance form in his Response, but it contains no allegations of discrimination or retaliation.  (*See* Doc. 12 at 17.)  But even if it did, resolving the dispute of whether the grievance procedure was property followed is the job of an arbitrator—not the Court—because as previously discussed, Plaintiff's claims are subject to the CBA's grievance and arbitration procedures.  *See Columbia Exp. Terminal, LLC*, 23 F.4th at 842.

Because Plaintiff failed to allege any arbitration attempts and his federal and state claims for discrimination and retaliation are covered by the CBA's grievance and arbitration procedure, the Court lacks jurisdiction over this action.  *See Thomas*, 744 F.

Supp. at 203.  Thus, the Court will dismiss Plaintiff's federal claims for discrimination and retaliation without prejudice pursuant to Rule 12(b)(1).  The Court will also dismiss Plaintiff's state law claims for the reasons described below.

**B. Plaintiff's state law claims for discrimination and wrongful termination/retaliation are preempted and time-barred.**

MV argues that under Section 301 of the Labor Management Relations Act ("LMRA"), *see* 29 U.S.C. § 185(a) (1988), Plaintiff's state law discrimination and wrongful termination claims are preempted.  (Doc. 10 at 9.)  The Supreme Court has held that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute."  *Lingle*, 486 U.S. at 405–06*; see also Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement.") (cleaned up).

The Ninth Circuit has employed a two-part test to determine if a state law claim is preempted by Section 301.  *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007).  The first prong requires the Court to consider "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.  If the right exists solely as a result of the CBA, then the claim is preempted and [the Court's] analysis ends there."  *Id.* at 1059.  But if the Court determines that that the right underlying the state law claim "exists independently of the CBA," then it proceeds to the second prong to examine whether the right is "substantially dependent on analysis of a collective bargaining agreement."  *Id.* at 1059–60.  A right is "substantially dependent on analysis" of a CBA if the claim can be resolved by "'look[ing] to' [the CBA] versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not."  *Id.* at 1060.  If a state law claim is preempted by Section 301, it is barred by the

LMRA's six-month statute of limitations.  *See Milne Emps. Ass'n v. Sun Carriers*, 960 F. 2d 1401, 1411 (9th Cir. 1991).

Here, Plaintiff argues his claims are not dependent on the CBA and that MV cannot "bootstrap" the CBA onto these claims by arguing Plaintiff was terminated for reasons covered by CBA.  (Doc. 12 at 11.)  MV counters that the CBA's terms require interpretation to determine if Plaintiff's termination was warranted.  (Doc. 15 at 7.)

MV does not argue prong one of the Ninth Circuit's test.  Plaintiff, on the other hand, argues that the right to be free of discrimination from your employer under federal and state law are rights independent of the CBA.  (Doc. 12 at 12); *see also Said v. Nat'l R.R. Passenger Corp.*, 390 F. Supp. 3d 46, 55 (D.D.C. 2019).  The Court agrees that Plaintiff's state law claims are conferred under A.R.S. § 23-1502(A), and §§ 41-1401 to 41-1492 of the Arizona Civil Rights Act ("ACRA").  (*See* Doc. 1-3 at 2–3.)  The Court therefore moves to prong two of the analysis.  *See Burnside*, 491 F.3d at 1059–60.

MV argues Plaintiff's state and federal discrimination and wrongful termination claims are premised on the same allegations, and therefore cannot be resolved without interpreting the CBA to determine if Plaintiff's termination was lawful.  (Doc. 10 at 13.)  Specifically, MV argues Plaintiff's termination was lawful under the CBA because it had a legitimate, non-discriminatory basis for termination: "Plaintiff's threats to employees and customers, . . . and just cause for immediate termination pursuant to Article 14 (Discipline and Discharge), Section 2 and 4 (Serious Infraction) of the CBA."  (*Id.*)

MV also argues that Plaintiff's allegations of MV's discriminatory animus require the CBA's interpretation.  For example, MV argues that Plaintiff's allegations about his timecards being inaccurately adjusted require interpretation of Article 20 (Run and Time Requirements), Article 26 (Holiday Party), Article 27 (Sick Leave), and Article 36 (Employee Wage Rates).  (*Id.*)  Furthermore, MV asserts that Plaintiff's allegations about being questioned for tardiness require interpretation of Article 17 (Attendance); allegations of being assigned difficult routes requires a look at Article 10 (Seniority), Article 19 (Bidding), and Article 20 (Run and Time Requirements); and allegations that

false complaints were made against Plaintiff necessitates review of Article 9 (Grievance and Arbitration), and Article 14 (Discipline and Discharge). (*Id.*) The Court agrees.

In *Audette v. International Longshoremen's and Warehousemen's Union*, the Ninth Circuit held that a plaintiff's claims that their employer violated state anti-discrimination laws by denying them Class B registration were preempted because the parties' CBA set forth the registration procedures and dispute resolution steps. 195 F.3d 1107, 1110–12 (9th Cir. 1999). The *Audette* Court found "resolution of the discrimination and retaliation claim turns on defendants' offer of a 'legitimate nondiscriminatory reason' requiring interpretation of the collective bargaining agreement," and the Court would therefore need to interpret the CBA to determine if plaintiff met the Class B criteria set forth. *Id.* at 1113; *cf. Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748–49 (9th Cir. 1993) (distinguishing between state law claims that require interpretating CBA provisions and are therefore preempted, as opposed to claims that merely require referencing a CBA and are not preempted).

Moreover, in *Madison v. Motion Pictures Set Painters and Sign Writers Local 729*, the Central District of California held that a plaintiff's FEHA claims that his union discriminated against him by filing a meritless grievance that reflected poorly on him were preempted by Section 301 because the CBA would need interpretation to determine if the union was required to notify plaintiff before filing a grievance. 132 F. Supp. 2d 1244, 1248–53 (C.D. Cal. 2000). However, the *Madison* Court also held that plaintiff's claim that the union discriminated against him by agreeing to discriminatory hiring procedures was not preempted because the plaintiff did not allege that "the Union or contract employers . . . incorrectly interpreted the agreement." *Id.* at 1252. The *Madison* Court concluded, "unlike the aspect of [plaintiff's] claim that challenges the hiring procedures negotiated as part of the CBA, the question is not whether unambiguous, neutral provisions of the CBA have a disparate impact on African-Americans, but whether the Union followed CBA procedures in filing the grievance against [defendant], and whether that grievance had merit." *Id.* at 1254.

- 11 -

1    Here, the Court agrees with MV that Plaintiff's claims are akin to those in *Audette*

2    and *Madison*.  Plaintiff's state law discrimination and wrongful termination claims cannot

3    be resolved without interpreting the CBA because MV relies on the CBA's provisions

4    and procedures to proffer a legitimate, non-discriminatory reason to justify Plaintiff's

5    termination.  *See Audette*, 195 F.3d at 1113.  Additionally, like in *Madison*, the CBA

6    provisions here will require the CBA's interpretation to determine if MV followed the

7    procedures set forth, and if Plaintiff's allegations of discriminatory animus have merit to

8    support his alleged discrimination and wrongful termination.  *See* 132 F. Supp. 2d at

9    1252.

10    As such, the Court finds Plaintiff's state law discrimination and retaliation claims

11    preempted by LMRA Section 301.  Claims subject to Section 301 are also subject to a

12    six-month statute of limitations.  *Audette*, 195 F.3d at 1111.  Regarding Plaintiff's

13    discrimination claim, the Complaint alleges MV discriminated against Plaintiff between

14    February 2021 and July 22, 2021.  (*See* Doc. 1-3 at 4–6.)  As to Plaintiff's wrongful

15    termination claim, Plaintiff was terminated on July 22, 2021.  (*Id.* at 6 ¶ 25.)  Plaintiff

16    filed the Complaint on July 19, 2022.  (*Id.* at 11.)  Because Plaintiff filed this action

17    nearly twelve months after the causes of action arose, Plaintiff's state law claims for

18    discrimination and wrongful termination/retaliation are time-barred and therefore

19    dismissed with prejudice pursuant to Rule 12(b)(6).  *See Audette*, 195 F.3d at 1111.

20    **C.  Plaintiff failed to plead a defamation claim.**

21    To state a defamation claim under Arizona law, Plaintiff needs to allege that MV

22    published a false and defamatory communication, and that MV "(a) knows that the

23    statement is false and it defames the other, (b) acts in reckless disregard of these matters,

24    or (c) acts negligently in failing to ascertain them." *Rowland v. Union Hills Country*

25    *Club*, 757 P.2d 105, 110 (Ariz. Ct. App. 1988) (citation omitted).  Likewise, the

26    defamatory statement must have been published to a third party and caused plaintiff

27    damage.  *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007).  Trial courts must

28    determine whether a statement has defamatory meaning. *Yetman v. English*, 811 P.2d

323, 331 (Ariz. 1991).

Here, Plaintiff's Complaint alleges that MV "published statements to numerous employees stating that Plaintiff showed up at the workplace on September 11, 2021 and that he did so for unlawful reasons, intentionally invoking fear given the date in question and Plaintiff's national origin." (Doc. 1-3 at 10 ¶ 48.)  Plaintiff also alleges that he "was damaged by the defamation by Defendant." (*Id.* ¶ 49.)  Plaintiff does not dispute being on the property that day. (*See id.* at 2–11.)  Furthermore, Plaintiff does not allege that MV knew of its falsity, or that MV acted negligently in failing to ascertain the truth. (*See id.*)  Therefore, Plaintiff has failed to satisfy the minimum pleading standards to state a claim for defamation. *See Rowland*, 757 P.2d at 110.  Plaintiff's defamation claim is therefore dismissed without prejudice under Rule 12(b)(6).

## IV. LEAVE TO AMEND

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of the facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up).  Plaintiff cannot cure the pleading deficiencies of Count One because the state law claims are time-barred, and therefore dismissed with prejudice.  Plaintiff also cannot cure the pleading deficiencies of Counts Two and Three because he must follow the required grievance and arbitration procedures set forth in the CBA.  However, the Court will grant Plaintiff leave to amend his defamation claim, Count Four.

Plaintiff's Amended Complaint must address the deficiencies identified above and should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Within twenty-one (21) days from the date of entry of this Order, Plaintiff may submit an amended complaint. Plaintiffs must clearly designate on the face of the document that it is the "First Amended Complaint." The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

1

## V. CONCLUSION

2         Accordingly,

3         **IT IS ORDERED** granting MV's Motion to Dismiss (Doc. 10).

4         **IT IS FURTHER ORDERED** dismissing Plaintiff's federal discrimination and

5    retaliation claims (Counts Two and Three) **without prejudice** under Rule 12(b)(1).

6         **IT IS FURTHER ORDERED** dismissing Plaintiff's state law discrimination and

7    wrongful termination/retaliation claims (Count One) **with prejudice** under Rule 12(b)(6).

8         **IT IS FURTHER ORDERED** dismissing Plaintiff's defamation claim (Count

9    Four) **without prejudice** under Rule 12(b)(6).

10        **IT IS FURTHER ORDERED** granting Plaintiff leave to amend Count Four of

11   his original Complaint within twenty-one (21) days from the entry of this Order.

12        Dated this 21st day of April, 2023.

13

14

15                              _____
                                Honorable Susan M. Brnovich
16                              United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28